HENRY COLT & others, executors, *vs.* FRANKLIN B. CONE.

The provision of the Gen. Sts. c. 130, § 18, that if any law for the limitation of actions is alleged in defence against a demand in set-off, the limitation shall be applied as if to an action brought thereon at the same time with the plaintiff's action, exempts from the special statute of limitations of actions against executors and administrators (Gen. Sts. c. 97, § 5) a demand in set-off, pleaded more than two years after an executor gave his bond, in an action brought by him before the end of the two years.

In an action by A. on B.'s promissory note, in defence against which B. sets up that he sold stock in the Ohio and Mississippi Railroad Company to A. for a sum to be ascertained and indorsed on the note, parol evidence is not competent to vary a memorandum signed by the parties that "A. takes B.'s Ohio & Miss. stock for $5100 & odd dollars, to be ind. on B.'s note on date" of the sale; and the construction of the memorandum, as a contract, is for the court and not the jury, if there is no dispute as to the signification of the abbreviations, or the number of dollars more than $5100 and less than $5200, or the specific note, referred to therein.

CONTRACT by the executors of the will of William Pollock, on a promissory note of the defendant, dated December 9, 1857, for $6494.11, payable on demand, to his own order, with interest, by him indorsed in blank, bearing indorsements of the receipt of interest up to April 1, 1862, and also the following indorsement, signed by Pollock: "$5,133.33. April 23, 1863. Received on the within note, this date, five thousand one hundred thirty-three dollars, thirty-three cents." Writ dated October 7, 1867.

The defendant answered on February 11, 1868, admitting that he was the maker of the note, that Pollock at the time of his

death was the holder of it, and that all the indorsements alleged by the plaintiffs, save the indorsement above quoted as signed by Pollock, were correct ; but alleging that this was incorrect, and should have been made for $6984.35, and that the note was paid in full and the defendant owed the plaintiffs nothing thereon.

The defendant at the same time declared in set-off ; and on November 12, 1869, he filed, by leave of court, an amended declaration in set-off, in which he alleged that on April 23, 1863, the defendant owned, and Pollock had in his possession, certain securities called Trustees' Certificates of the Ohio & Mississippi Railroad, which the defendant agreed to sell to Pollock, and Pollock agreed to buy, for fifty per cent. of what they had cost the defendant, including interest ; that Pollock at the same time agreed to indorse upon the defendant's note, which he was holding, the amount which he was to pay for the securities ; but that Pollock never did so, and his executors refused to do so ; and that upon the said securities, retained in his or their possession, Pollock or his executors collected large sums of money, to wit, $20,000, to which the defendant was entitled. Another count of the declaration in set-off was upon an account annexed, for poultry and country produce of various kinds sold by the defendant to Pollock, the items of the account running from June 1863 to May 1865.

The plaintiffs, in answer to the amended declaration in set-off, admitted that Pollock in his lifetime bought the defendant's interest in the Ohio & Mississippi Railroad, and that the amount he was to pay for it was to be applied on the defendant's note and they alleged that it was indorsed and applied upon the note, and that if Pollock or his executors ever afterwards received proceeds from the interest in the railroad which the defendant sold, they received the same as of their own right, and were not liable therefor to the defendant. They also denied all the items of the defendant's account against Pollock for poultry and country produce. And for further answer, they set up the special statute of limitations of actions against executors and administrators, Gen. Sts. *c.* 97, § 5, and alleged that the amended declaration in set-off was not filed within two years after they gave their bond

At the trial in the superior court, before *Putnam*, J., it appeared that Pollock died December 9, 1866 ; that his will was duly proved and allowed February 5, 1867 ; and that the plaintiffs gave bond as his executors February 23, 1867. The plaintiffs requested the judge to rule that certain items of the account annexed to the amended declaration in set-off, which were not included in the declaration in set-off first filed, were barred by the specia. statute of limitations ; but he ruled otherwise.

The plaintiffs also requested, and the judge refused, a ruling that the defendant could avail himself of a set-off " only to the extent of reducing the amount due on the note in suit, so as to prevent a judgment in favor of the plaintiffs on the note, and was not entitled to a judgment against the plaintiffs for any balance thereof beyond the note."

The defendant contended that on or about April 23, 1863, he and Pollock, in New York, made an oral contract for the sale by him and purchase by Pollock of " a one sixth interest in a share in a contract to construct the Ohio & Mississippi Railroad, for one half of what it had cost him, including interest on the sums paid out for and on account of said stock as a part of the cost ; " the plaintiffs contended that such interest was not to be included in the computation ; and whether or not it was to be included was " the only question in dispute between the parties, so far as the contract was concerned."

It appeared that it was agreed in New York that the half of what the stock had cost the defendant should be ascertained at the Pittsfield Bank in Massachusetts on a subsequent day, and be indorsed on the defendant's note, " in part payment ; " and that the parties twice afterwards met at the bank and had conversation concerning the subject ; and the defendant testified " that at one of these interviews there was a memorandum in writing signed by him and Pollock respecting the amount to be indorsed on the note, which memorandum was given to one Adams, the cashier of the bank, to aid him in making a calculation of the amount, and that Pollock said at the time, after it was made, that if there was anything about it which was not right it should be made right."

The plaintiffs then put the memorandum in evidence. It bore date of May 16, 1863, and was signed by Pollock and the defendant; and the body of it, which was in the handwriting of Adams, was as follows : " Pollock takes F. B. Cone's Ohio & Miss. for $5100 & odd dollars, to be ind. on F. B. Cone's note on date they were in N. Y., say about 15th April." It also appeared that the body of the indorsement of the receipt of $5133.33, upon the note, was in Adams's handwriting. The plaintiff Colt testified that, after Pollock's death, this memorandum of May 16, 1863, was found, pinned to the note, among his effects.

The plaintiffs contended " that this written paper limited the amount to be indorsed on the note in payment of the stock, and that the sum so limited could not exceed $5200." But the judge ruled " that, while the paper was evidence tending to show that the plaintiffs' claim as to what was the contract was correct, yet that it was not conclusive, and that the jury were to say whether the parties intended by it to limit the amount to be indorsed on the note to the sum named ; that if they found that the parties intended this as a reduction to writing of their contract, or a final agreement between them as to the amount to be indorsed on the note, it was conclusive, and could not be controlled, and that by it the sum to be indorsed was to be a sum not exceeding $5200 ; but that, in determining this, they were to consider the evidence of the defendant as to the purpose for which the paper was made, and that Pollock agreed that if there was anything about it not right it should be made right." The jury returned a verdict for the defendant for $1502.42 ; and the plaintiffs alleged exceptions.

*M. Wilcox*, for the plaintiffs.

*T. P. Pingree & J. M. Barker*, for the defendant.

GRAY, J. The rulings upon the defendant's right to recover under his declaration in set-off were correct. The statute of set-off declares that " if any law for the limitation of actions " (thus clearly including the special statute of limitation of actions against executors and administrators, as well as the general statute of limitations) " is alleged by way of defence to the defendant's demand, the limitation shall be applied in the same manner as it would have been to an action brought on the same

demand if it had been commenced at the time when the plaintiffs' action was commenced." Gen. Sts. *c.* 130, § 18.

The point, that the defendant could avail himself of so much only of his set-off as was equal in amount to the plaintiffs' demand, was wisely abandoned at the argument; for it is expressly provided that, " if it appears that there is a balance due from the plaintiff to the defendant, judgment shall be rendered for the defendant for the amount thereof." Gen. Sts. *c.* 130, § 20.

But the effect of the writing dated May 16, 1863, was wrongly submitted to the jury. That writing was not a mere informal receipt or bill of parcels. It was a complete, though brief, agreement, signed by both parties, describing the property to be taken by the plaintiffs' intestate and limiting the price which he was to pay therefor, and fixing the date as of which that price should be indorsed on the defendant's note. If there had been any controversy as to the meaning of the words " Ohio & Miss.," or more than one note had been given by the defendant, parol evidence would doubtless have been admissible to identify the subjects of the contract. But there was no dispute upon either of these questions; for it was admitted that the property transferred by the defendant to the plaintiffs' intestate was stock in the Ohio & Mississippi Railroad Company, and that the note in suit was the only one to which the agreement could relate. These facts being ascertained, there was no doubt or ambiguity in the agreement, and the question of the intent of the parties to it must be determined by the court from the writing itself.

*Exceptions sustained.*