# O'Byrne *v.* Jebeles & Colias Confectionery Co.

*A Bill Confessing Forfeiture of Lease and Seeking Relief Against Same.*

(Decided Jan. 20, 1910.—51 South. 633.)

1. *Landlord and Tenant; Forfeiture of Lease; Equitable Relief:*— Where complainant leased the premises for ten years with covenants to erect a building thereon, and to keep it in good repair and sanitary, on a forfeiture of the lease for breach of these covenants, he was not entitled to equitable relief where he failed to show that a breach of the covenants warranting forfeiture did not exist, as omission or neglect in one or all of these particulars, tends to impair or destroy the inducements of the lease.

2. *Same; Estoppel.*—The allegation that complainant was lured to inattention to repairs by the uniform conduct and treatment of his landlord, does not amount to an allegation of a waiver of the breach of the covenant to repair on which the forfeiture is based.

## 184     SUPREME COURT     [Vol.

3. *Same; Breach; Covenant To Repair; Waiver.*—Where the lease required a waiver to be expressly agreed upon and provided against a waiver by mere inaction or by extension of time or performance of the covenant the lessee cannot claim a waiver of forfeiture for the breach of the covenant to repair because he was lured to inattention to repairs by the conduct of the landlord.

4 *Same; Covenants.*—A covenant to keep in repair a building erected by the lessee on leased premises included a defect consisting in the sinkage of the floor several inches and contemplated repairs of other than defects going to the integrity of the building.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by T. W. O'Byrne against the Jebeles & Colias Confectionery Company, as assignee of Mary F. Robinson. From a judgment sustaining demurrers to the bill, complainant appeals. Affirmed.

The contents of the bill are sufficiently set out in the opinion. The notice referred to therein, so far as breaches of covenant are concerned, is as follows: "That for a stipulated rental reserved in said lease, and on condition that you will keep the property in repair and in good order, and to keep the lot and appurtenances at all times in good and proper condition, and to keep said premises in good and sanitary condition, the undersigned, as assignees and purchasers from Mary F. Robinson, hereby declare the said lease forfeited and terminated, because of your failure to repair the building on said premises, when said repair was and is needed, and because the floors of the said building have become rotten in places and have sunken and have large holes in them, and the closets and plumbing are out of repair and unsanitary, and said building needs paper on the walls of said rooms which have become torn off in places, there are several leaks in the roof, which injure the building, all of which repairs have been needed for more than thirty days, and because said premises are not kept in good sanitary condition. The said

lease having terminated by this notice, the undersigned has taken possession of the premises."

A. LATADY, for appellant.—The grantors of a reversion may not enter for a condition broken even though the covenant might be one that ran with the land.—24 Cyc. 927; Taylor's Landlord & Tenant, section 489. Counsel discuss the provisions of the lease, confess a forfeiture, but insist that under the facts in this case equity will relieve against it.—*Schiefferlin v. Carpenter,* 15 Wend. 409; *Calhoun v. Wilson,* 27 Grat. 94 U. S. 53; 108 Cal. 208; 34 Ark. 246; 42 La. 230.

C. B. POWELL, for appellee.—Counsel insist that the decision should be affirmed on the authority of section 3365, Code 1907; *Doe v. Clayton,* 73 Ala. 359; *Otis v. McMillan,* 70 Ala. 46. While forfeitures are not favored by courts of equity, yet, a court of equity will not, without some valid excuse prevent a landlord from reentering his own premises when the tenant violates the terms upon which the property is rented to him.—*Miller v. Graves,* 51 Mich. 482; *Patton v. Bon,* 50 Ia. 508; *Jackson v. Allen,* 3 Cow. 220; *Tate v. McClure,* 25 Ark. 168; *Coleman v. Hight,* 14 La. Ann. 564; *Mayer v. Mitchell,* 53 Md. 171; *City of N. O. v. Rigney,* 24 La. Ann. 235; *Maxwell v. Todd,* 112 N. C. 677; *McGowey v. Puckett,* 27 Ohio 669; *Jackson v. Harrison,* 17 John. 66; *Baldwin v. Reece,* 6 Ohio, Dec. 869; *Brown v. Vandergridt,* 80 P. St. 142.

McCLELLAN, J.—As the solicitor for complainant (appellant) concedes, the theory of the bill confesses a forfeiture under the terms of a 10-year lease made between complainant and the respondent's assignor, and, so confessing, invokes equity jurisdiction for relief

[O'Byrne v. Jebeles & Colias Confectionery Co.]

against the forfeiture.—1 Pom. Eq. § 453. The theory of the bill is good, but the vital question is whether complainant makes out a case for his relief.

Mrs. Robinson, respondent's assignor and grantor, owned a vacant lot in Birmingham. She leased it to complainant for 10 years, the termination of which was to be December 31, 1909. The consideration of the possession, use, and enjoyment of the lot was stated to be the erection within 90 days and without cost to the lessor of a described brick building on the lot and the payment to the lessor of $20 each month during the continuance of the lease. After about eight years of the term had expired, the respondent declared the lease forfeited because of breaches of the conditions whereon the life of the lease was expressly made to depend of course upon the option of the lessor or her successors in right. These breaches of the covenant were enumerated in the notice exhibited in the bill, and the reporter will summarize them.

There would be no hesitancy in upholding the equity of this bill if the result of the lessee's omission was to breach covenants intended to assert the prompt payment of money rent, and this without reference to whether the lessor had entered or not.—*Attalla Mfg. Co. v. Winchester,* 102 Ala. 184, 14 South. 565; *Root v. Johnson,* 99 Ala. 90, 10 South. 293. But the situation in this instance involves more than that. It is evident from the lease that the use for the time of the lessor's lot was to be largely compensated for by the edifice to be placed on it. The termination of the term would leave the lessor with a lot improved by the building so erected by the lessee. Contracting, as they did, with reference to such a status, it was well anticipated to the lessor's protection that maintained repair and sanitation should be particularly required, even to the end

[O'Byrne v. Jebeles & Colias Confectionery Co.]

that, if not done, the lease should terminate. Indeed, and as is obvious, omission or neglect in one, or both, of these particulars, would necessarily tend to the serious impairment, if not practical destruction, of the very essence of the lessor's inducement to the lease, viz., the building, constructed as specifically provided and maintained in repair and sanitary condition. The period of the lease was such as to give time and climate opportunity to mar the structure. As the structure became less in good repair, the lessor's consideration, in part, would wane in value. The effect of time and climate upon ordinary buildings of the character of this, to say nothing of their possible injury from occupancy, is often silent and usually gradual, and the results therefrom destructive of the building's integrity. Diligence, it may be safely said, is necessary to detect, and in a measure to necessarily anticipate, the effect of the passing of time, of wind, and weather. It was within the covenants of the lease that the lessee should guard and repair the natural effects and results indicated. Such care and duty were assumed by the lessee. Under these circumstances, we think the doctrine thus announced in 1 Pom. Eq. § 454, applicable here: "Equity will not, under ordinary circumstances, relieve against a forfeiture arising from the breach of other covenants contained in a lease, on the ground that no exact compensation can be made. Among these, covenants for breach of which no relief can ordinarily be given is that to repair generally, or to make specific repairs. * * *" The learned author cites in note 1 a number of English authorities aptly supporting his text. These have been read, and, if anything, they put the matter more strongly than the text.

Aside from the controverted breach of the covenant in respect to sanitation, the bill does not deny want

of repair, in most, if not all, of the particulars enumerated in the notice declaring the termination of the lease. In view of the terms of this lease, we are not willing to say that the undenied repairs enumerated, as having been omitted, are trivial. The sinking of the floor to a distance of two inches cannot be pronounced inconsequential, to the end of avoiding the forfeiture stipulated for. Nor is there any merit in the insistence that the covenant for repair only contemplated defects going to the integrity of the building. To so interpret the lease would violate the letter and evident spirit and purpose of the instrument. Doubtless, under such a lease, it is possible a defect might appear that would be close upon the border line of triviality, and hence too inconsequential to justify a court of equity in refusing relief against a forfeiture. But such a condition is not here presented. The want of repair in some of the particulars pertained to serious defects wrought by time or use, or both.

There is an allegation that complainant was lured into inattention to these repairs by the "uniform conduct and treatment of his former and present landlord." This averment is obviously short of an allegation of a waiver of the breaches on which the forfeiture was based. Besides, the instrument requires a waiver to be "expressly agreed" upon, and concludes against a waiver by mere inaction or by the extension of time for performance of the covenants.

There is no equity in the bill. The decree must be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.